THE STATE v. BEN LAYTON, Appellant.—58 S. W. (2d) 454.

Division Two, March 3, 1933.

*Stratton Shartel,* Attorney-General, for respondent; *L. A. Vonderschmidt* of counsel.

ELLISON, P. J.—The defendant appeals from a conviction of felonious assault in the Circuit Court of Greene County. The jury being unable to agree on the punishment, the court assessed it at five years' imprisonment in the penitentiary. The defendant has filed no brief.

The evidence for the State in substance was that about four o'clock in the morning of April 11, 1931, the defendant, Layton, went to the home of the complaining witness, Mrs. Betty Eaves and her husband, Floyd Eaves, in the country near Walnut Grove in Greene County, looking for his wife, who was a sister of Mrs. Eaves. Defendant was armed with a shotgun and had a revolver concealed on his person. He called Mr. Eaves from his bed and out of the house and stated he had come for his wife, and that he was "going to get her this time if I have to shoot her damn brains out." Eaves informed the defendant that Mrs. Layton was not there. The defendant asked him where she was and Eaves told him she was in Polk County about fifteen miles away. Layton then said "get your clothes on, you are going to direct me over there." Eaves went back into the house and proceeded to dress, the defendant following him with the shotgun and remaining in the room.

About that time Mrs. Eaves, who had been awakened by the noise, "made a little racket" in the adjoining room. The defendant said "tell them fellows to stay out in there, don't one of them come in here." When Eaves had finished dressing he and the defendant went back out on the porch. Just about that time Mr. Eaves' nephew, Oliver Eaves, threw the door open and said "here, what's going on out here?" The defendant whirled around facing him. Floyd Eaves quickly reached around the defendant's body and seized hold of the shotgun to prevent the defendant from firing it, and cried to his nephew to shoot the defendant. The nephew went back into the house for a gun. While Floyd Eaves still kept his hold on the shot-

gun the defendant drew the revolver out of his pocket and about that time there was a little noise in the house behind the door opening on to the porch, which it seems was closed. The defendant fired the revolver twice, both shots striking Mrs. Eaves and inflicting flesh wounds, one on the arm and the other on the side above the hip. This shooting is the basis for the charge of felonious assault contained in the information.

The defendant's version of the occurrence was that after Floyd Eaves had seized hold of the shotgun in his hands and cried out to Oliver Eaves to shoot him, the defendant, he heard a noise in the house and thereupon shot the revolver into the house. He said "I figured it would keep them from shooting from the house." Other facts will be stated as necessary in the course of the opinion.

■ I. The defendant filed a motion to quash the information, a motion to quash the jury panel, and a "motion to prevent introduction of evidence," in all of which the charge is made that the information is so vague, indefinite and uncertain: (a) that it wholly fails to charge any offense known to the laws of the State; (b) that it cannot be determined from the information on what statute the charge is based; (c) that a conviction or acquittal under the information would not be a bar to a subsequent prosecution for the same alleged offense. Error in the overruling of these several motions is assigned in the motion for a new trial.

The statute, Section 4014, Revised Statutes 1929, provides that "every person who shall, on purpose and of malice aforethought, shoot at . . . another with a deadly weapon . . . with intent to kill . . . such person, shall be punished by imprisonment in the penitentiary not less than two years." The information charges that the defendant "did then and there, wilfully and unlawfully in and upon one Betty Eaves, feloniously, on purpose and of his malice aforethought, did make an assault, and did then and there on purpose and of his malice aforethought feloniously shoot at her, the said Betty Eaves, with a certain deadly weapon, to-wit: a revolver loaded with powder and leaden balls, which he, the said Ben Layton, then and there held in his hand, with the intent then and there her, the said Betty Eaves, on purpose and of his malice aforethought to kill and murder, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State."

While inartificially drawn and repetitious it will be seen at once the information substantially charges the defendant shot at Betty Eaves with a revolver, on purpose and maliciously, intending to kill her. These assignments are ruled against the defendant.

■ II. The aforesaid three motions, to quash the information, to quash the jury panel, and "to prevent introduction of evidence,"

of the overruling of which the motion for new trial complains, further severally assigned that the circuit court was without jurisdiction: (1) because the complaint by which the prosecution was instituted in justice court under Section 3467, Revised Statutes 1929, was not sworn to by the complainant; (2) and was based on hearsay evidence; (3) and because the defendant was not accorded a legal preliminary hearing under Section 3503, Revised Statutes 1929.

The defendant introduced testimony on these issues tending to show the complaint was signed by the complainant, Chas. L. Chalender, an assistant prosecuting attorney, and sent through the mail to the justice of the peace without being sworn to; and that the justice thereupon issued the warrant under which the defendant was arrested. Such was the vague recollection of the justice, and Mr. Chalender could not clearly recall the facts. But the jurat on the complaint recites it was sworn to before the justice, and a deputy sheriff who was present when the warrant was issued testified Mr. Chalender made oath to the complaint at that time. So there was evidence from which the circuit court could have found against the defendant on this issue of fact.

As to the complaint's being based on hearsay evidence, Mr. Chalender admitted he had no first hand knowledge of the facts attending the assault; and that he obtained the information on which he filed the complaint from parties present thereat. But the complaint is not expressed to be verified on information and belief; it contains a positive recital of the facts, unconditionally sworn to. We know of no reason why this is not entirely sufficient to meet the requirements of Section 3467, Revised Statutes 1929. [See 16 C. J. sec. 504, p. 292; State v. Carey, 56 Kan. 84, 42 Pac. 371.]

Furthermore, all the contentions made by the defendant under this assignment must fail for the further reason that the defendant waived a preliminary hearing as the transcript expressly states. It was held in State v. Nichols, 330 Mo. 114, 49 S. W. (2d) 14, 19, where the record wholly failed to show the filing of a complaint and the defendant did not waive a preliminary hearing, that the proceedings were fatally defective and without a jurisdictional foundation. But when, as here, a complaint is filed, and the defendant voluntarily waives preliminary examination and allows himself to be bound over to the circuit court the contrary is true. [State v. Flannery, 263 Mo. 579, 173 S. W. 1053; State v. Piro, 246 S. W. 928.]

III. As stated, the motion for new trial complains of the overruling of the defendant's motion to quash the panel. The assignment is general, merely saying "the court erred in refusing to quash the panel of jurors in accordance with the defendant's motion for the reasons therein set out." The reasons set out in this latter motion

are "that the manner of selecting the panel of jurors was illegal and wholly unauthorized under the Constitution and laws of this State." Conceding this was sufficiently specific for the purposes of the motion to quash the panel, it is not valid as a specification of error in a motion for new trial. Section 3735, Revised Statutes 1929, provides a motion for a new trial in a criminal case "must set forth in detail and with particularity in separate numbered paragraphs, the specific grounds or causes therefor." The defendant cannot, by merely asserting generally in a motion for new trial that the court committed error in failing to sustain some other motion "for the reasons therein set out," preserve for review vague, general assignments in that other motion, which are altogether lacking in definiteness as required by the new trial statute. We are not, therefore, called upon to look for error in the selection of the jury panel.

■ IV. The motion for a new trial assigns that the evidence was insufficient to support the verdict. We consider this question in connection with the further assignment therein that the court erred in refusing to sustain the defendant's motion, filed at the close of the evidence, to require the State to amend the information by striking out the words "on purpose and of his malice aforethought" to conform to the proof.

It is well settled that if one recklessly and maliciously discharge a firearm into a crowd, it is murder at common law, that is to say, the act imports a criminal intent and legal malice sufficient to constitute murder. [29 C. J. sec. 65, p. 1091; State v. Glover, 330 Mo. 709, 50 S. W. (2d) 1049, 1052.] There is no reason why the same rule should not apply when one shoots into a house or similar place where he has like reason to believe people are, who may or will be struck by the bullet. But it is held in State v. Mulhall, 199 Mo. 202, 227, 97 S. W. 583, 590, 7 L. R. A. (N. S.) 630, 8 Ann. Cas. 781, that a defendant cannot be convicted of an assault with intent to kill under what is now Section 4014, Revised Statutes 1929 (the statute upon which this prosecution is based) unless it be shown that the defendant shot at or otherwise assailed the person upon whom the assault is charged to have been committed; and that he did so with intent to kill *that person*. On this theory it was ruled in State v. Kester, 201 S. W. 62, where a defendant was charged with assault with intent to kill under the above statute, that a conviction could not stand on evidence showing merely the defendant fired a pistol into a house and severely wounded a woman therein, there being no proof that he saw or could have seen the woman at the time although he probably knew people were in the house.

This Kester decision was concurred in with expressed reluctance by FARIS, J.; but even if it be good law, we think it does not destroy

the State's case on the record here presented. The instant defendant heard a noise behind the door and for reasons explained by the testimony fired a revolver in that direction twice, hitting Mrs. Eaves both times. The jury was warranted in finding he shot at the person behind the door intending to kill that person, although not knowing who was there. The person proved to be Mrs. Eaves. This in our opinion was sufficient. Somewhat along the same line in State v. Wansong, 271 Mo. 50, 61, 195 S. W. 999, 1003, where strikers assaulted a milk wagon driver in the dark believing him to be another man, the defense was made that the defendants did not intend to kill the person whom they were charged with assaulting; but the court held it was not a mistake as to *intent,* the mistake being only as to the identity of the person.

█ V. The tenth assignment in the motion for new trial is that the circuit court erred in permitting Dr. McClure and Mr. and Mrs. Eaves to testify concerning the wounds inflicted upon her by the shooting. This testimony was brief and simply disclosed that she was wounded in the arm and side. It is contended evidence of this character was immaterial and prejudicial since proof that the defendant shot at her intending to kill her made a complete case under the statute regardless of whether she was struck or not. There is no merit in this contention. Evidence that the wounds were inflicted was competent as tending to show the intent with which the defendant fired the revolver. [State v. Baird, 271 Mo. 9, 15, 195 S. W. 1010, 1013.]

█ VI. A further assignment complains of the trial court's rejection of an offer of proof made by the defendant that a short time before the shooting Mr. and Mrs. Floyd Eaves implored the defendant's wife not to return to him and stated they would kill the defendant if he came upon their premises to get her. There was no offer to show these threats had been communicated to the defendant before the shooting. It was not error to exclude this testimony. Uncommunicated threats made by the person assaulted may be proven when the defendant claims self-defense and there is an issue as to whether he or the assailed was the aggressor: State v. Hale, 238 Mo. 502, 512, 141 S. W. 1125, 1128; State v. Baublits, 324 Mo. 1199, 1208, 27 S. W. (2d) 16, 19. But it is not contended that Mrs. Eaves was the aggressor; defendant expressly denied that he shot at Floyd Eaves and in so doing unintentionally hit Mrs. Eaves; he made no request for a self-defense instruction; and his motion for new trial does not complain of the failure to give one. In these circumstances the proffered evidence was incompetent.

224

█ VII. As to the instructions. The motion for a new trial contains an assignment that the lower court erred in failing to instruct on all the law of the case; but this clearly is too general to preserve the point for review, State v. Simon, 317 Mo. 336, 345, 295 S. W. 1076, 1080. Another assignment is based on the court's alleged failure to give instructions on certain specified points in compliance with a written request therefor filed by defendant at the close of the case. This assignment seems to be insufficient under several decisions. In these it is ruled that even where the defendant draws and submits the requested instructions his assignment in a motion for new trial complaining of their refusal will not be considered, though they be set out in the motion, unless it specifies the *reasons* why such refusal was erroneous: State v. Bailey, 320 Mo. 271, 278, 8 S. W. (2d) 57, 60; State v. Shuls, 44 S. W. (2d) 94, 97; State v. Fisher, 46 S. W. (2d) 555.

█ But, dealing with the assignment on its merits. One request was for an instruction on the credibility of witnesses and another for an instruction on the presumption of innocence, further telling the jury they must find beyond a reasonable doubt the defendant had a felonious intent as against Mrs. Eaves. These matters were sufficiently covered by the instructions given.

█ █ Still another request was for an instruction on the right of the defendant "to act upon appearances," and advising the jury his act in shooting "may be construed as one intended to frighten and not an intent to kill." Inasmuch as the defendant did not invoke self-defense we cannot see why he was entitled to an instruction on the right to act on appearances. As to the other point—telling the jury his act might be construed as one intended to frighten and not to kill—if the request be interpreted literally such an instruction would have invaded the province of the jury. If it called for a converse instruction to acquit the defendant in case the jury believed he shot merely to frighten and not intending to kill, the question has been decided against defendant's contention. In State v. Noeninger, 108 Mo. 166, 171, 18 S. W. 990, 992, the defendant fired at W but did not hit him. He testified he intentionally shot over W.'s head only to frighten him, and contended the court should have given an instruction directing his acquittal if that testimony was believed. This court held the matter was sufficiently covered by the State's instructions which were no more favorable to the defendant than those here. In the instant case the State's instruction required the jury to find the defendant shot at Mrs. Eaves on purpose and of his malice aforethought, intending to kill her; and added "if you do not so find the facts to be, you should find the defendant not guilty."

The last request was for an instruction that a conviction was "not warranted if the evidence shows that the defendant shot at another" and had no motive or intent to shoot Mrs. Eaves. This request was properly refused. There was a noise behind the door. The defendant did not know who was there, though he may have believed or suspected it was Oliver Eaves, Floyd Eaves' nephew. He either shot at the person so concealed, or, as he says, he did not intend to hit anyone but merely to frighten those inside the house. There was no error in the refusal of the two converse instructions mentioned in this and the preceding paragraph for another reason. The appellant merely made a general request that instructions along this line be given; he did not write them out and present them to the court. In these circumstances the court's refusal was not error. [State v. Ledbetter, 332 Mo. 225, 228, 58 S. W. (2d) 453; State v. Gurnee, 309 Mo. 6, 15, 274 S. W. 58, 61.]

VIII. Another assignment in the motion for new trial is that the court failed to provide "separate forms of possible legal verdicts for the use of the jury." The bill of exceptions does not show that the defendant raised any such point during the trial, or that he objected to the two forms furnished or excepted to the failure to give others. This we say aside from the fact that it was not necessarily incumbent on the court to furnish forms of verdict for the jury to take into the jury room. It is not contended the forms provided misled the jury. There is no merit in this assignment.

IX. The motion for new trial charges the verdict was the result of passion and prejudice but the record does not show it. There are a few other assignments in the motion too vague and general to call for consideration. We find no reversible error and the judgment is, accordingly, affirmed. All concur.