STATE of Missouri, Respondent,

v.

Frederick Tyrone GANT, Appellant.

No. 56964.

Supreme Court of Missouri,
Division No. 2.

Feb. 12, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Willard B. Bunch, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant; Paul T. Miller, Executive Director, Kansas City, of counsel.

STOCKARD, Commissioner.

Frederick Tyrone Gant was found guilty by a jury of first degree murder and sentenced to life imprisonment. The notice of appeal was filed before January 1, 1972. Appellate jurisdiction is in this court.

A jury reasonably could find from the evidence that about four o'clock of the morning of July 1, 1970, appellant and two companions entered a Clark service station in Kansas City, Missouri, and by use of a gun robbed Herb H. Green and Charles Wright, attendants. After the money was obtained, Green and Wright were ordered to go to a back room, and while they were in a kneeling position both were shot. Wright died from the injuries inflicted.

Prior to trial appellant moved to suppress all evidence of identification. An evidentiary hearing was held, and the motion was overruled. On this appeal it is asserted that the trial court erred because (1) the lineup was the result of an illegal arrest; (2) appellant did not have counsel at the lineup; (3) the lineup was conducted under suggestive circumstances.

█ We need not in this case rule the issue of whether evidence of identification at a lineup should be suppressed when the lineup follows an unlawful arrest for the reason that we have concluded that in the circumstances of this case there was probable cause for the arrest of appellant.

The money taken in the robbery consisted of bills and coins. In addition two coin changers were taken with their contents. On July 17, one week after the robbery, Police Detective Kenneth Riddell, who was investigating the robbery, was contacted by an informer, well known to Officer Riddell, who frequented the area where the robbery occurred. The informer told Officer Riddell that appellant participated in the robbery and the homicide of Charles Wright, and that appellant had been seen in the area at a market exchanging coins for paper money. Officer Riddell had used this informer on prior occasions and considered him to be reliable source of information. On cross-examination of Officer Riddell pertaining to the reliability of his informer, he stated that another person referred to by the informer as having committed a different homicide was arrested and later admitted his part in the homicide, and that the informer had previously furnished him the name of a person who was later arrested and charged, but he did not know the disposition of that case.

█ When Officer Riddell received the above information it was his duty as a police officer to continue his investigation and determine whether appellant participated in the robbery and homicide. The next logical step would be to find out whether Mr. Green could identify appellant as the robber. Because the information received was considered to be reliable, Officer Riddell issued what was called a "pick up order." It is true that when appellant was "picked up" an arrest occurred in the sense that he was restrained and taken to the police station. The purpose was for further investigation, and that investigation was to determine whether the only living victim could or could not identify him as the robber. It would be unreasonable and unrealistic to hold that before appellant could be "picked up" and placed in a lineup that the police had to have such "probable cause" as would be sufficient to sustain a conviction. In determining the validity of an arrest for a felony, "we are

dealing with the probability, and not the certainty, that an offense has been or is being committed. While probable cause implies that the information which has come either directly or indirectly to the arresting officers' knowledge must rise above mere suspicion of criminal activity, it at the same time need not be tantamount to that quantum of proof which would sustain a conviction of guilt." Clay v. United States, 8 Cir., 394 F.2d 281. See also State v. Berstein, Mo., 372 S.W.2d 57. The test is whether the arresting officer had "reasonable ground to suspect that the person arrested has committed a felony." State v. Bailey, 320 Mo. 271, 8 S.W.2d 57: For additional discussion, see Mueller v. Powell, 8 Cir., 203 F.2d 797. Information from an informer who is reasonably considered by the police officer to be reliable justifies an arrest, and the informer's information need not be first hand. Hawkins v. United States, 8 Cir., 288 F.2d 537. We note with interest that although appellant challenges the right of the police to take him into custody under the above circumstances, in his brief he is highly critical of the police for not taking a person by the name of Byrd into custody and placing him in a lineup when the only basis therefor was that Mr. Green had said that a photograph of Byrd "looked like or possibly resembled" the robber, but he could not identify him as such.

The trial court determined the arrest of appellant to have been made with probable cause. That determination is supported by the evidence, and is not clearly erroneous.

■ Appellant's second point is that evidence of his identification at the lineup should have been suppressed because counsel was not present. In an amended brief appellant admits that the lineup was held prior to any charge being filed. In Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411, it was held that there was no constitutional requirement that counsel be present at such lineup. See also State v. Walters, Mo., 457 S.W.2d 817. However, in his amended brief appellant asserts that

the Public Defender Law, House Bill 1314, 1972 Regular Session, effective August 13, 1972, created a statutory right of an indigent to counsel at every lineup regardless of when held. Reliance is placed on § 8, ¶ 3 of the Act which sets forth the duties and scope of responsibilities of the Public Defender as follows: "Representation [of indigents] shall extend to all stages of the proceedings, including interrogation, custody, preliminary hearing, arraignment, trial and appeal, if any, * * *." Appellant also relies on par. 1 of the same section which provides: "Each circuit public defender * * * shall * * * represent indigent persons: * * * (2) Upon request by such a person who is charged or detained in connection with a felony."

The lineup in this case was held on July 18, 1970, and the trial was held January 25, 1971. It is sufficient to rule in this case only that the Public Defender Law is not retroactive. Its effective date as a law was August 13, 1972, and whether or not it created any right in an indigent accused to counsel at any particular stage of a criminal proceeding after its effective date, it created none prior to that time.

■ Appellant's third point is that he was exhibited in a lineup "under suggestive circumstances" which constituted a denial of due process.

The lineup consisted of three persons. They were, of course, not identical in appearance, weight, and height, but they were of the same complexion and were within a reasonable range of age and build. There were no suggestive comments made by those conducting the lineup. Appellant seems to rely primarily on the fact that several days before the lineup Officer Lewis showed Mr. Green five photographs, none of which were of appellant. Mr. Green did not identify any person in the photographs as being the robber, but he indicated that the person in one photograph, a person named Byrd, "looked like or possibly resembled the suspect other than the mustache." He later identified a photo-

graph of appellant as the person who robbed him, and at the lineup he again identified appellant. Appellant argues that procedure followed, judged by the totality of the circumstances, was so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process.

In the circumstances of this case, the use of the photographs was not improper. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247. The lineup was properly conducted. There are no circumstances in the identification procedures of this case which denied or adversely affected any constitutional right of appellant. Compare State v. Moore, Mo., 435 S.W.2d 8, and State v. Reeder, Mo., 436 S.W.2d 629.

Appellant's last point is that the court erred in permitting Officer Lewis to testify that Herb Green had identified appellant at the lineup.

Appellant relies primarily on State v. Degraffenreid, Mo., 477 S.W.2d 57, which was not decided until approximately ten months after appellant's trial. It was there held that in the circumstances of that case it was error to permit a police officer to give hearsay testimony that a victim of a crime identified the accused in a lineup as the one who committed the crime.

Mr. Green testified on direct examination without objection that he identified appellant at the lineup. On cross-examination he also testified that he identified a photograph of appellant. Officer Les Lewis subsequently testified *without objection* that he exhibited photograph to appellant, that he conducted a lineup in which appellant was present, and that Mr. Green identified appellant at that lineup as the person who robbed and shot him. On cross-examination Officer Lewis was questioned concerning the showing of photographs and the manner in which the lineup was held. In the motion for new trial, the only reference to any testimony of Officer

Lewis is the assignment, "The court erred in refusing to sustain defendant's motion for judgment of acquittal filed at the close of the State's case and again at the close of all the evidence in that the testimony of Detective Les Lewis was so incredible and contradictory that it was entitled to no weight as a matter of law and the evidence was not sufficient to sustain a verdict of guilty as a matter of law."

It thus appears that in his brief on this appeal the appellant has for the first time presented the contention that it was error to permit Officer Lewis to testify that Mr. Green identified appellant at the lineup, and particularly that it was hearsay: the issue upon which the Degraffenreid case was ruled. Testimony not objected to at trial, and issues not presented in a motion for new trial are not preserved for appellate review. State v. Brown, Mo., 298 S.W.2d 351; State v. Rinck, Mo., 467 S.W.2d 897; State v. Mace, Mo., 429 S.W.2d 734, certiorari denied 393 U.S. 1122, 89 S.Ct. 1003, 22 L.Ed.2d 128; State v. Franklin, Mo., 448 S.W.2d 583. The effect is that appellant agrees to the admission of the testimony and waives any objection thereto.

Appellant argues in his brief that at the conclusion of the hearing on the motion to suppress evidence of identification of appellant, he asked that objections regarding the arrest and subsequent identification of appellant be considered to be continuing objections during the trial, and that the request was granted. At the hearing on the motion to suppress, Officer Lewis testified *without objection* that he conducted the lineup and that at the lineup "Mr. Green identified Frederick Gant and stated he was the party that was the suspect involved in the shooting and robbery of the service station." There was no objection at the hearing on the motion to suppress which in any way challenged the admission into evidence of testimony of Officer Lewis that Mr. Green had identified appellant

at the lineup, and particularly on the basis that such testimony was hearsay.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.