251 S.W.2d 610 (1952)
STATE
v.
DAVIS.
No. 42979.
Supreme Court of Missouri, Division No. 1.
October 13, 1952.
*611 William R. Hirsch and Louis Gilden, St. Louis, for appellant.
J. E. Taylor, Atty. Gen., John S. Phillips, Asst. Atty. Gen., for respondent.
COIL, Commissioner.
A jury convicted Omega Davis of rape, found that he had theretofore been convicted of three prior felonies, and fixed his punishment at life imprisonment in the penitentiary. He has appealed from the judgment and sentence entered on the verdict. We shall refer to appellant as defendant.
Five assignments of error are briefed: that the evidence was insufficient to sustain the verdict; that the court erred in failing to require the circuit attorney to proceed under the Criminal Sexual Psychopath Act; that the court erred in permitting improper use of matters in issue under the Habitual Criminal Act; that the court erred in permitting allegedly prejudicial argument to the jury, and in recalling the jury after it had retired and reading to it portions of the alleged improper argument made by the assistant circuit attorney.
On November 10, 1949, at about 11 p. m., prosecutrix, 47 years old, was seated directly under a lighted, unshaded, 100-watt electric bulb in a room of her basement apartment. Asleep in the room was her infant grandchild. She resided there with her husband who was then at a nearby tavern. At the front of the room were some windows at which the curtains were arranged so that light from a row of electric lights at a used car lot directly across the street shone into the apartment and made a good light when the 100-watt electric bulb was off. Prosecutrix looked up from the newspaper she was reading and saw a Negro man standing in the door. A handkerchief covered his face beneath his eyes.
This man, whom prosecutrix twice positively identified, shortly after his arrest on November 12, 1949 and at the trial, entered the room, jumped upon prosecutrix, pulled off the light above her, and forcibly ravished her. In her efforts to remove the assailant's hands from her throat she felt the index finger of his left hand and was able to discern that it was deformed. The handkerchief slipped from his face. She *612 got a good look at his face. She identified defendant mainly by his eyes, his features, and his crooked finger. Immediately after the assailant left, prosecutrix went to the tavern and indicated in an incoherent way that something had happened. She then became unconscious. Her husband testified that her hair was then "mussed up" and her clothes were wet.
A medical examination made of prosecutrix between 12 and 12:15 on November 11, 1949 (about an hour after the assault) disclosed bruises on the neck, submucosal hemorrhages at various points of the introitus, and possible "intervaginal mucous". The hemorrhages were, in the opinion of the testifying doctor, caused by a "forcible sexual act" and the bruises about the neck appeared to have been inflicted about the same time as had the submucosal hemorrhages of the introitus.
No separate argument is included in defendant's brief in support of the contention that the evidence was insufficient. Defendant states only in his "Points and Authorities" that the testimony was confused, uncorroborated, and uncertain, and refers to the "vague identification" in connection with another point. Suffice to say the evidence was sufficient to sustain the conviction. True, defendant's counsel elicited on cross-examination of prosecutrix certain testimony which might have caused the jury to question her opportunity and ability to have observed defendant sufficiently to later identify him. For example, the facts that she did not know the color of various items of clothing worn by defendant, the color of his hair, that she constantly wore bifocal glasses which were knocked from her eyes shortly after the assault began, and that without glasses she could not read the fine print in a telephone book. None of this testimony, nor any other testimony in the record, destroyed the probative value of her positive identification of defendant. State v. Young, 345 Mo. 407, 411[5], 133 S.W.2d 404, 407[7]. "We may say at once that there is no merit in the various assignments in the motion for new trial charging in one way or another that the evidence was insufficient, and that the verdict was the result of passion and prejudice. While it is held that in a forcible rape case where the prosecutrix is a mature woman and the State's evidence is weak, there should be corroboration, State v. Thomas, 351 Mo. 804, 818 (6), 174 S.W.2d 337, 345(13); we do not regard the State's evidence here as weak. And if corroboration was necessary, it is abundant: the victim's complaint at the first opportunity; her physical appearance showing the use of force; her mental distress; the material evidence that she had lain on the ground where there was sand, there being also sand in the alley; and the testimony of the physician who examined her genital organs. State v. Scott, 172 Mo. 536, 541, 72 S.W. 897, 898." State v. Marshall, 354 Mo. 312, 318[2], 189 S.W.2d 301, 304[3-5].
In 1946 defendant pleaded guilty on successive days to the crimes of rape and sodomy. He was separately sentenced in each case, the sentences running concurrently. He had been imprisoned in the penitentiary, and was duly discharged in July 1948. The record proper discloses, after an amended information had been filed in which convictions of three prior felonies, including the offenses of rape and sodomy, were alleged, an entry of June 23, 1950: "This day comes the defendant, by his attorney, and files motion to proceed under the Act to provide for the detention and treatment of criminal sexual psychopaths." The motion was heard and overruled. Later a defense motion for the appointment of a psychiatrist was sustained and a report of an examination made of defendant was filed November 20, 1950. On January 8, 1951, both parties announced ready for trial. Neither of the motions just referred to are set forth in the record proper nor in the transcript filed here.
Defendant states in his brief that the circuit attorney was informed by a reputable person of the facts as required by the Criminal Sexual Psychopath Act, sections 202.700-202.770, RSMo 1949, V.A. M.S., and that it was therefore mandatory that the circuit attorney file in the proper court a petition as provided in the Act and to proceed against defendant as a criminal sexual psychopath. Assuming without deciding *613 that there was no discretion in the circuit attorney, the difficulty with defendant's contention is that there is nothing before us from which we may determine whether defendant properly took the necessary preliminary steps to bring himself within the provisions of the Act, or from which we may determine whether it was error to fail to proceed under the Act. This, for the reason that even assuming that the motion to proceed under the Act did contain the necessary allegations, such motion is not included in the transcript. Furthermore, the fact that the record proper shows that the motion to proceed under the Act was overruled, without more, indicates that it did not contain the necessary allegations. Upon the record before us, we must assume that the trial court acted properly. Defendant's statement in his motion for new trial that the necessary facts were given to the circuit attorney by a reputable person does not prove itself any more than does the statement to that effect in defendant's brief. State v. Skaggs, Mo.Sup., 248 S.W.2d 635, 637[5, 6].
Defendant's fifth assignment of error is: "It was prejudicial error for the State to overemphasize the prior convictions for offenses growing out of the same transaction, for the Habitual Criminal Act (section 556.280 RSMo 1949, V.A.M.S.) is based upon recurrent offenses and not upon recurrent convictions for offenses arising out of the same transaction." (Parenthetical insert ours.) Defendant's argument is that the state so overemphasized the prior convictions that the offense upon which defendant was being tried "was pushed into the background and buried under the onslaught of prior convictions." As we understand this contention, it is based upon the premise that the prior conviction of rape and the prior conviction of sodomy grew out of the same occurrence and that, therefore, it was prejudicial to permit the jury to know of these two prior offenses because it gave them the impression "that defendant is a hardened criminal with a long record of recurrent offenses * * * when the facts show that said offenses grew out of one entire transaction." There is nothing in the record proper or in the transcript to indicate that the prior offenses of rape and sodomy did or did not grow out of one "entire transaction" other than a possible inference from the facts that the pleas of guilty to these charges were entered on successive days, April 2 and 3, 1946, and the sentences imposed ran concurrently. All that was read in evidence as to the prior offenses were the judgment entry in each case, the records of confinement in the respective institutions, and the records of discharges therefrom. None of these, of course, disclosed when or the circumstances under which the crimes were alleged to have been committed. Consequently, the premise upon which defendant's argument is based is unproved and we may not assume it. We, therefore, do not rule the specific contention here made. It would appear, however, that, inasmuch as rape and sodomy are separate offenses under the laws of this state, and made so by unrelated statutes, sections 559.260, 563.230 RSMo 1949, V.A.M.S., if the defendant felt that, by showing that two of the prior offenses involved arose out of one "transaction" he might thereby correct some impression the jury might otherwise have as to his criminal record, he was at liberty to so show.
It is true that the jury panels were told on voir dire examination that defendant was charged with the crime of rape, that he was charged with having had three prior convictions of felonies, and were told what those felonies were. The members of the trial jury were again so told in the state's opening statement. In both instances, these statements by the prosecution were made over defendant's objection. As part of the objection (that the mention and repetition of the particular offenses involved in the prior convictions was prejudicial), defendant's counsel admitted in the presence of the jury that defendant did have three prior convictions for felonies, had been sentenced and imprisoned therefor, and discharged therefrom prior to the date of the offense for which he was on trial. The trial court overruled these objections.
Thereafter the state offered the evidence heretofore noted to prove the prior convictions and discharges of the defendant. At *614 that time, the objection was to the reading of the entire record, on the ground that the only material facts were the facts of conviction, confinement, and discharge, which the defendant had admitted. The judgment entries as to the prior convictions were then read in evidence, in which defendant's counsel apparently acquiesced.
"The Court: Now, the objection will be overruled to her reading the contents of that particular Entry.
"Mr. Hirsch: And as to the rest of the record, the objection is sustained, Your Honor? The Court: As I understand the question, she is to read the Entry of Judgment in that case. Mr. Hirsch: Only? The Court: Only. Mr. Hirsch: All right." Thereafter, defendant's counsel's objection to the evidence was that the record spoke for itself. Then the court said: "You are complaining about procedure, not the admissibility? Mr. Hirsch: Yes.
"The Court: Do you want me to have the reporter mark this page or pages as an exhibit? Mr. Hirsch: Yes, sir. The Court: Then Miss Carpentier mark as an exhibit for The State, that part of the record concerning Case 144, April Term 1946."
After the judgment entries had been read, the following occurred:
"Mr. Kelly: All right. I will offer in evidence at this time, State's Exhibits 4, 5, and 6 (the judgment entries).
"Mr. Hirsch: At this time I will object to their admissibility on the question of discharge or of serving; as far as conviction of a felony I have no objection to their admissibility.
"The Court: You don't object to the competency or legal admissibility of these entries? Mr. Hirsch: No; but, I will object to that as far as discharge. The Court: Discharge, of course, will be proved by other evidence. Mr. Hirsch: Yes."
Thereafter, the record pertaining to discharge from the penitentiary was read without objection and the record pertaining to the discharge from the sentence to the city workhouse was objected to on the ground that only the discharge was in issue and that reading of the record which contained the charge for which sentence had been imposed was reiteration.
Instruction 4 submitted to the jury for a finding whether defendant had been convicted of three prior felonies, sentenced for them, and discharged therefrom prior to the commission of the crime for which he was on trial, and stated the nature of the offenses for which defendant had been convicted. While there was a general objection by counsel for defendant to all the instructions given by the court, defendant does not here attack any of the instructions given. And the instructions made clear that defendant was on trial for the offense of rape alleged to have been committed on November 10, 1949, and only upon the evidence which was introduced pertaining to that offense, and further that the fact of a former conviction should be considered as bearing only upon the question of the amount of punishment in the event the jury found defendant guilty of the crime upon which he was being tried.
Defendant does not here contend that it was prejudicial error for the court to permit the state to tell the jury what the prior offenses were or to adduce evidence to prove the prior convictions for the reason that an admission thereof had been made. Nor did defendant so contend in his motion for new trial. There defendant assigned in general terms as the reasons for the prejudice the reiteration and undue emphasis and also the alleged fact that two of the offenses grew out of "the same transaction". We therefore do not reach the question of whether it was error for the trial court to permit a jury to learn of the offenses involved in the prior convictions over objection and after a judicial admission of all the necessary facts to make the Habitual Criminal Act applicable to the defendant.
The very provisions of that Act, and our decisions construing it pertaining to the necessary proof thereunder, do often and obviously result in prejudice to a defendant. But this prejudice is inherent when the "habitual criminal issue" is injected into a case. State v. Spencer, 355 Mo. 65, 74[11], 195 S.W.2d 99, 105[16].
*615 In the light of the record before us, the ground stated in the motion for new trial, and the assignment of error here made and the argument thereunder, we may not say that the prejudice to defendant (which undoubtedly occurred by reason of informing the jury on voir dire, in the opening argument, by the introduction of evidence, and by instructions in the case, of what the offenses were for which prior convictions were had) went beyond that prejudice which is inherent in a trial involving the "habitual criminal issue".
In his closing argument, the assistant circuit attorney, apparently in answer to argument by defendant's counsel (not included in the transcript) to the effect that the state had failed to call as witnesses two police officers whose names were endorsed on the information, under subpoena, and apparently present in the courtroom during a portion of the trial, argued that defendant could have placed these witnesses on the stand if he had so desired. In this connection, the transcript shows the following:
"Mr. Kelly: Sure, we didn't bring everybody from Delmar down here, we didn't bring everybody from the Eleventh District, except those we wanted and needed, and who could tell you what happened in this case. I could have put a dozen witnesses on the stand, if I wanted to, to prove my case. He knew who these witnesses were; they were here; he tells you himself; he could have put those witnesses on if he could have proved the points he wanted; he told you he believedMr. Hirsch: That's a misstatement of the law; I couldn't call his witnesses unless I have ground; and, if I do it maliciously, I would be subject to a lawsuit. The Court: Overruled. Mr. Hirsch: Exception.
"Mr. Kelly: If they would have testified to what he says they would, why didn't he put them on there? I didn't hide them; I didn't secrete them any place. He says we didn't even put anybody on there who was present when this identification was made. I submit to you: is your memory so short you don't remember Officer Milne, who testified to what took place? Mr. Hirsch: I object to that; the testimony doesn't show that. I ask the reporter to read the testimony of Officer Milne at this time. The Court: You will be governed by the testimony as you remember it. Mr. Hirsch: I would like the reporter to read the testimony. The Court: Overruled. Mr. Hirsch: Exception."
Defendant now contends that these witnesses were "available" to the state and not to the defendant; that the defendant could therefore properly comment upon the failure of the state to call them and was entitled to an inference that their testimony would have been unfavorable to the state had they been called; that the state may not relieve itself of this adverse inference by retaliating in argument by asking why defendant did not use the witnesses present or subject to subpoena; and that such argument by the state is prejudicial error. It is true that where a witness is peculiarly "available", within the meaning of that word as used in this connection, to the state and is not called as a witness, then, subject to certain limitations (not here mentioned), defense counsel may comment upon the state's failure to call the witness and the state may not relieve itself of the adverse inference by retaliatory argument to the effect that the defendant could have produced the witness. State v. Collins, 350 Mo. 291, 294, 165 S.W.2d 647, 649[3]. For application of the rule and its limitations, see: Russell v. St. Louis Public Service Co., Mo.Sup., 251 S.W.2d 595; Deaver v. St. Louis Public Service Co., Mo.App., 199 S.W.2d 83, 85, 86; State v. Beasley, 353 Mo. 392, 396, 182 S.W.2d 541, 544[7][8]; State v. Shilkett, 356 Mo. 1081, 1089, 204 S.W.2d 920, 926.
But defendant's present contention is made for the first time on this appeal. The reason now assigned was not included in the motion for new trial and thus was not called to the attention of the trial court. The reason assigned in the motion for new trial was "that said comments by the State constituted a violation of the defendant's right against self-incrimination as guaranteed to him by Sec. 19, Art. 1, of the Missouri Constitution 1945, V.A.M.S., and 14th *616 Amendment of the United States Constitution."
It is well settled that reasons stated in a brief but not in the motion for new trial are of no avail. State v. Ellis, Mo.Sup., 159 S.W.2d 675, 676[5]; State v. Powers, 350 Mo. 942, 944, 169 S.W.2d 377, 378[3-5]. Defendant's brief may not supply deficiencies in his motion for new trial. State v. Henderson, 356 Mo. 1072, 1076, 204 S.W.2d 774, 777[3, 4]. Furthermore, as shown by the quoted portion of the transcript, the objection made, if it be considered an objection at all, did not at the time of objection call the attention of the court to the alleged error now asserted by defendant. The so-called objection was: "That's a misstatement of the law; I couldn't call his witnesses unless I have grounds; and, if I do it maliciously, I would be subject to a lawsuit." Objections must be sufficiently specific to call the attention of the trial court to the ground upon which the objection is made. State v. Medley, 360 Mo. 1032, 1042, 232 S.W.2d 519, 525. Defendant in his argument, tacitly conceding that his objection at the trial did not assign the reason now urged, says that we should review the alleged error under the provisions of Supreme Court Rule 3.28. Apparently defendant refers to Supreme Court Rule 3.27 providing for consideration of plain errors affecting substantial rights even though not properly preserved. This rule is one of civil procedure and is inapplicable in criminal cases. Section 506.020 RSMo 1949, V.A.M.S. Supreme Court Rule 3 is one which supplements and harmonizes the Civil Code.
The final assignment of error briefed by defendant is that the court erred in refusing to grant a mistrial for alleged error in reading and rereading to the jury a portion of the argument made by the assistant circuit attorney. After the jury had retired and had deliberated for almost two hours, the foreman caused the following communication to be delivered to the court: "Could the defence have called Corp. Dowd & Corp. Wall to the witness stand, if not placed on the stand by the prosecution previously". The trial judge recalled the jury to the courtroom where were present the defendant, his trial counsel, and two assistant circuit attorneys. The court directed the reporter to read to the jury the argument of the assistant circuit attorney, the objection of defense counsel, and the court's ruling thereon, which has been heretofore set forth in connection with the preceding point. Thereafter, the record shows:
"(The following colloquy took place at the bench without the hearing of the jury:)
"Mr. Hirsch: At this time, Your Honor, I will object to the reading of that portion of the argument by the Court on the ground that it constitutes a comment upon the evidence by the Court, which is invading the province of the jury; and, at this time I move that the jury be dismissed and the defendant be granted a new trial. The Court: You are asking for a mistrial? Mr. Hirsch: Yes, in the motion, Your Honor, but not actually. The Court: Objection overruled." (Emphasis ours.)
Thereupon, the following occurred: "Jury Foreman: Your Honor, if I may inquire, are we to assume that the defense had authority, or are we going to wait on that until a later time? The Court: Let me have the reporter read that to you again. Jury Foreman: In my mind, I understood it, let's say that. The Court: Let me have the young lady read again that part of the argument."
The argument heretofore set forth was again read to the jury. Whereupon, the following occurred: "Mr. Hirsch: I renew my objection at this time only because the correlated parts of the defendant's closing argument have not been read. The Court: What part of your argument do you want read? Mr. Hirsch: I am not familiar with the entire record. The Court: Any part of your argument that bears on this question will be read at your request. Mr. Hirsch: Well, Your Honor, it is late; I will waive that request. The Court: You surrender or abandon it? Mr. Hirsch: I do appreciate the offer, Your Honor. I will waive it; it is quite agreeable with me." (Emphasis ours.)
Defendant asserts this action of the court constituted a comment upon the evidence, invaded the province of the jury, and "gave *617 undue prominence to the fact that the defendant had not taken the stand nor offered any evidence on his own behalf * * *." The answer to this contention clearly appears from the portions of the record heretofore set forth. Certainly defendant may not now complain of the failure of the court to discharge the jury. In answer to the court's question, "You are asking for a mistrial?" counsel answered, "Yes, in the motion, Your Honor, but not actually"; and then, upon the rereading of the portion of the argument, counsel's objection was, "I renew my objection at this time only because the correlated parts of the defendant's closing argument have not been read"; the court then offered to read any part of defendant's argument bearing on the question asked by the jury, whereupon counsel for defendant stated: "I will waive that request * * * I do appreciate the offer, Your Honor. I will waive it; it is quite agreeable with me."
Counsel may not inform the trial court that he is not serious about a motion to discharge the jury, apparently waive his former objections and waive his request for a reading of portions of defendant's argument, and then contend on appeal that the trial court erred in failing to discharge the jury because of the court's action in reading portions of the state's argument.
We do not reach the question of, and express no opinion upon, the propriety of the trial court's action in reading and rereading the portion of argument under consideration, or in reading any portion of an argument in answer to an inquiry by the jury.
We have examined the record proper. The amended information is in proper form and is sufficient to charge the offense of forcible rape, section 559.260, RSMo 1949, V.A.M.S. and the fact of three prior convictions, section 556.280 RSMo 1949, V.A. M.S. The verdict was responsive to the charges of the amended information and the punishment was within applicable statutory limits. Sections 559.260 and 556.280, supra. Defendant was present in court, was granted allocution, and judgment was pronounced, all in compliance with the provisions of applicable statutes. Sections 546.550, 546.560, 546.570 RSMo 1949, V.A. M.S.
The judgment is affirmed.
VAN OSDOL and LOZIER, CC., concur.
PER CURIAM.
The foregoing opinion by COIL, C., is adopted as the opinion of the court.
All concur.