STATE of Missouri, Respondent,

v.

Kaiser CARSON, Appellant.

No. 44853.

Supreme Court of Missouri.

Division No. 2.

Feb. 13, 1956.

Robert J. O'Hanlon, St. Louis, for appellant.

John M. Dalton, Atty. Gen., John S. Phillips, Asst. Atty. Gen., for respondent.

BARRETT, Commissioner.

Kaiser Carson has been found guilty of the burglary of the New Way Super Market at 1960 Goodfellow and of the larceny of merchandise of the wholesale value of $665.17. The jury also found the two prior felony convictions, alleged assault with intent to rob and burglary and larceny, and accordingly fixed his punishment at ten years' imprisonment for the burglary and five years' imprisonment for the larceny.

Four of the appellant's assignments of error in his motion for a new trial concern matters relating to his prior convictions and the habitual criminal act. In this connection it urged that the court erred in permitting the circuit attorney in the course of his voir dire examination to refer to the habitual criminal statute and to disclose the nature of the prior convictions and the sentences imposed for the reason that the ref-

erences and information were inflammatory and prejudicial to the defendant's right to a fair trial. It is also urged that it was prejudicial error for the court to answer the jury's inquiry whether it was mandatory to impose the maximum sentence in the event the prior convictions were found and, finally, it is urged that the punishment inflicted was cruel and unusual.

■ In the trial of this case there was no admission by the defendant or agreement by his counsel as to the fact of the prior felony convictions and there was no preliminary effort to limit or restrict the use of the prior convictions to the instructions and finally to the infliction of the maximum penalty after the jury had found the appellant guilty of the principal offense. In this connection, compare the implications of State v. Davis, Mo., 251 S.W.2d 610. In the trial of this case the defendant, as was his right, stood upon his plea of not guilty, offered no evidence and made no agreements as to any fact. It has been pointed out that inflammatory prejudice inheres in the fact of a defendant's felony record and the employment of the habitual criminal act, State v. Spencer, 355 Mo. 65, 74, 195 S.W.2d 99, 104–105, but in the circumstances of this record it was necessary for the state to prove the prior convictions and it was necessary that the court properly instruct the jury upon their effect. In his voir dire examination the circuit attorney explained the function of the habitual criminal act and told the jury, as the court did in its instructions, that they were to disregard the prior convictions until they came to a decision of his guilt or innocence as to the principal charge. In the circumstances the voir dire examination did not go "beyond that prejudice which is inherent in a trial involving the 'habitual criminal issue'." State v. Davis, 251 S.W.2d loc. cit. 615.

■ In the course of the state's opening argument reference was made to the defendant's prior convictions but the public defender then made no objection whatever to the particular argument. Subsequently defendant's counsel argued the fact and ef-

fect of the prior convictions; "When a man is released from the penitentiary he is given five dollars and an old suit of clothes and a slap on the back. * * * He is stigmatized as an ex-convict. His civil rights are taken away from him. He is turned out degraded." The argument was employed as the basis of a plea for sympathy, mercy, rehabilitation and acquittal of the principal charge. In its closing argument the state retaliated by again arguing the prior convictions and the court did not prejudicially err in permitting it. State v. Beasley, 353 Mo. 392, 182 S.W.2d 541; State v. Lynn, Mo., 23 S.W.2d 139.

■■ Also in connection with this subject, the jury, in the course of its deliberations, sent this communication, signed by the forelady, to the judge: "We found the defendant guilty of both charges and of prior convictions, is it mandatory to impose the maximum sentence?" The court sent the following reply by the sheriff: "Answering above note, beg to advise that under the law it is your duty to impose the maximum sentence. Please read instruction No. 6." After the court's reply had been returned to the jury defense counsel objected and gave as his reason, "I feel that a reply should be generally that they refer to the instructions of the Court not any specifically named instruction or reiterating anything set up in any of the instructions." The court said, "I think you should have made that objection before I sent the reply back. After noting the defendant's objection, I might state that both you and the State's attorney were in my chambers before I dictated the reply note and sent it down. If you had objections to make, it appears to me you should have made them at that time." The trial court's observation may be a sufficient answer to the complaint now made. But if it is not, instruction six was the conventional two-page instruction concerning the purpose and effect of the former convictions and concluded by informing the jury that if they found the defendant guilty of the principal offense and thereafter found the prior convictions that it was their duty to assess the maximum punishment prescribed for

burglary and larceny. There was no impropriety in the jury's requesting further instruction, State v. Raven, 115 Mo. 419, 22 S.W. 376, and the jury having previously found the appellant guilty of the burglary and the larceny and of the prior convictions, as indicated by their communication, there was no alternative under the law than to inflict the maximum punishment and in the circumstances it was not prejudicial error for the court to so inform the jury. State v. O'Brien, Mo., 249 S.W.2d 433. Since no other penalty was possible under the law the sentence imposed was not so excessive as to constitute cruel and unusual punishment. State v. O'Brien, supra.

■ The first five and the twenty-second of the public defender's assignments of error that the verdict and judgment are against the greater weight of the evidence, against "the concrete and substantial evidence," that the court erred in overruling objections of defendant to testimony offered by the state and that the court erred, without specification of reasons, in not sustaining defendant's motions to dismiss at the close of the state's evidence and at the close of all the evidence are so lacking in detail and particularity, V.A.M.S. § 547.-030; Sup.Ct.Rule 27.20, 42 V.A.M.S., as to not present any reviewable question. State v. Rohman, Mo., 261 S.W.2d 69; State v. Wilson, Mo., 248 S.W.2d 857; State v. Montgomery, Mo., 223 S.W.2d 463. The twelve other assignments of error are concerned with the witnesses, the admission of evidence and the argument of counsel and require a brief résumé of the facts.

Shortly after eight o'clock on Sunday morning, April 11, 1954, the police received a telephone call to investigate an open door at 1960 Goodfellow. Officer Conley responded to the report and found the rear door of the New Way Super Market pried from its fastenings and leaning against the outside wall. Officers O'Connell and Bradley went to 1318a North Sarah, "the landlady" admitted them, and they went to the room of Miss Watkins with whom it was said the defendant had been living. On the floor in Miss Watkins' room there was a pile of merchandise, for the most part meat. After arresting Miss Watkins the police waited in the building and in about an hour the defendant Carson appeared and the police arrested him in the hallway as he was about to enter Miss Watkins' room. He immediately said, "I am not going to take the rap for all of it." According to the police, Carson told them that he and William Cleveland Ivory had pried the door from the market, removed and divided the merchandise. The Gitel brothers, the owners of the store, identified the merchandise found in the room as a part of the missing stock of groceries and testified that the wholesale value of all the missing merchandise was $665.17. The store owners as well as the police officers testified that the appellant admitted that he and Ivory had burglarized the store, removed the merchandise and divided it.

■ After the empanelling of the jury the state was given leave to endorse Officer Conley's name on the information as a witness. Defense counsel then claimed surprise and objected to the endorsement. It is claimed in the motion for a new trial that the court erred in permitting the endorsement for the reason that it deprived the defendant "of his constitutional right to be notified of the witnesses who were to appear against him" and, as a result, that he did not have a fair trial. It was Officer Conley who investigated the report of the open door and as far as the department was concerned officially discovered the burglary. While there was a claim of surprise and an objection when Officer Conley's name was endorsed as a witness, there was no request for a continuance and there was no objection whatever when the officer was offered as a witness and testified. There is no constitutional provision governing the endorsement of the names of witnesses, V.A.M.S. §§ 545.070, 545.240; Sup.Ct.Rule 24.17, and in the circumstances it does not appear that the court erred in permitting the endorsement in this case or that the appellant's right to a fair trial was infringed or that he is now in any position to complain of the fact. State v. Baker, 318 Mo. 542, 300 S.W. 699; State v. Boone, 355 Mo. 550, 196

754

S.W.2d 794; State v. Montgomery, Mo., 223 S.W.2d 463, 466.

■ Since the charge was burglary and larceny and the jury has found the appellant guilty of both offenses the value of the goods taken may be immaterial, V.A.M.S. § 560.110, but it was not prejudicial error to describe or admit in evidence the articles identified as having been taken from the store and found in Miss Watkins' room, State v. Stephens, Mo., 8 S.W.2d 3; State v. Rohman, Mo., 261 S.W.2d 69, nor was proof of the value of the goods prejudicially erroneous as against the claim that the fact was "irrelevant and immaterial and did not tend to prove or disprove any issues in the case and acted to the prejudice of the defendant." State v. Duncan, 336 Mo. 600, 80 S.W.2d 147. As indicated, the landlady admitted the officers to the apartment, the merchandise was found in Miss Watkins' room and the appellant's connection with the room and the apartment does not plainly appear except that someone said that he had been living with Miss Watkins. But aside from the problems presented by these facts, there was no motion to suppress the evidence and, of course, no hearing upon any such motion and since objection was first made when the evidence was offered upon the trial the court determined only the relevancy and competency of the evidence and not the collateral issue of the legality or illegality of the search and seizure. State v. Owens, 302 Mo. 348, 259 S.W. 100, 32 A.L.R. 383; State v. Tull, 333 Mo. 152, 160, 62 S.W.2d 389, 392; State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938, 103 A.L.R. 1301; annotation 150 A.L.R. 566, 573–575.

■ ■ Six of the appellant's assignments in his motion for a new trial are directed to the question of whether the court erred in permitting the Gitel brothers and the police officers to testify to the appellant's admissions, at the time of his arrest and subsequently at the police station, that he and Ivory had burglarized the store and removed the merchandise. When the first Mr. Gitel testified that appellant "Admitted that they broke into the store," the objection was "Your Honor, I will object to that at this time until an opportunity is had to cross examine the officer. * * * I am going to object to it at this time. The confession was gotten through force and threats, Your Honor. I want to cross examine the officer on that." When the second Mr. Gitel testified that "He admitted he broke the door to get in the store. Admitted he taken the stuff," there was no objection · or request whatever. Before Officer Bradley, who was the third witness, testified to the first admission counsel said, "Just a moment. I am going to object to that at this time. I would like to ask that this witness be examined briefly out of the presence of the jury with regard to that." The court said, "The motion will be overruled." Defense counsel replied, "I would like to question him about any threats." The court then said, "The motion will be overruled. You may question him in cross examination. Proceed with the examination." When the officer testified to Carson's admission at the police station there was no objection or request whatever and there was no objection or request for a preliminary inquiry when Officer O'Connell testified to the admissions both at the time of arrest and at the police station. Defense counsel cross-examined the officers fully as to the circumstances in which the admissions were made and whether they were voluntary but the cross-examination, if it proved anything, proved that the admissions were entirely voluntary. The defendant did not testify, offered no evidence, and there were no offers of proof on his behalf. Why the court did not accede to even the belated request for a preliminary inquiry as to the voluntariness of the admissions is not known. State v. Menz, 341 Mo. 74, 106 S.W.2d 440; State v. Gibilterra, 342 Mo. 577, 116 S.W.2d 88. In the circumstances of the one belated request for a preliminary inquiry, the admissions having been testified to by other witnesses without objection, 23 C.J.S., Criminal Law, § 1078(b), p. 516; State v. Mayberry, Mo., 272 S.W.2d 236, the appellant is now in no position to complain upon the basis of the one objection set forth that he was not permitted the preliminary inquiry as to the one witness,—he was permitted

that which he requested initially, the right to cross-examine the officers. State v. Smith, 354 Mo. 1088, 193 S.W.2d 499. In this connection, as far as appears from the record, the evidence testified to by the witnesses was, strictly speaking, of admissions and not confessions, certainly the statement first made upon entering the hall and being arrested. 22 C.J.S., Criminal Law, §§ 730, 732, pp. 1243, 1250. In any event, there is no evidence whatever in this record tending to show that the admissions were coerced in any manner, or, in short, that they were not voluntary; the first admission appears to have been spontaneous even. The appellant was then more concerned with whether he "would take the rap for all of it." Since the admissions were voluntary and there is no evidence supporting an inference to the contrary the court did not prejudicially err in admitting them, or in failing to specifically instruct the jury upon the subject of their voluntariness or in permitting state's counsel to argue the fact. State v. Hoskins, 327 Mo. 313, 36 S.W.2d 909; State v. Mayberry, Mo., 272 S.W.2d 236; State v. Higdon, 356 Mo. 1058, 204 S.W.2d 754; State v. Pillow, Mo., 169 S.W.2d 414, 417.

The remaining assignments of error concern the argument of the state's attorney. It is urged that the court erred in permitting counsel to argue "that there was no doubt of breaking in this particular case," to say that "the police did not know that the Defendant had a prior record," and, finally, to say "that if no private individual came before the jury to testify to the confession of the Defendant, the defense would come before them screaming that the confession was obtained by force and intimidation." Upon the merits of these assignments it is only necessary to say that state's counsel did not purport to state to the jury his personal belief as to any of these matters, a belief based upon information outside the record; his expressions of opinion or of conclusions were drawn from the facts in evidence and were therefore not improper in this respect. State v. Blackmore & Godsey, 327 Mo. 708, 38 S.W. 2d 32. Except to the statement, "I don't think there is any doubt in this case that the State has shown you there was a forcible breaking and entering into that super market located at 1960 Goodfellow," there was no objection to the opening argument on behalf of the state. Defense counsel in his argument dwelled at length on the appellant's prior convictions and the fact of his past record and as to the admissions said, in part, "If a confession had already been obtained, I think they failed to explain the reason why they took the precaution of inviting two independent people in there, the interested parties, the Gitel boys, to hear a confession that has been said three times." The argument of state's counsel now complained of was in response to and in retaliation of the argument made by defense counsel and the trial court did not prejudicially err in permitting the argument or in denying a new trial because of its having been made. State v. Lynn, Mo., 23 S.W.2d 139; State v. Beasley, 353 Mo. 392, 182 S.W.2d 541; State v. Leonard, Mo., 182 S.W.2d 548.

Questions not required to be presented in the motion for a new trial have been examined and the transcript shows compliance with all matters necessary to be considered by this court "upon the record before it." Sup.Ct.Rule 28.02; V.A.M.S. § 547.270. The information appropriately charges the appellant with the offense of burglary in the second degree and a larceny in connection with the burglary, V.A.M.S. §§ 560.-070, 560.110, the verdict is in proper form and responsive to the information, there was allocution and the sentence and judgment are responsive to the verdict. State v. Pitts, Mo., 282 S.W.2d 561. Since no prejudicial error is found or demonstrated upon the transcript the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.